# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JAMES MCCLAIN,<br><br>    Defendant. | Case No. 10-MJ-250<br><br>ORDER FOR PRETRIAL<br>DETENTION |

On the 6th day of October, 2010, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Anthony R. Morfitt. The Defendant appeared personally and was represented by his attorney, Raphael M. Scheetz.

## RELEVANT FACTS

On October 1, 2010, Defendant James McClain was charged by Criminal Complaint (docket number 2) with possession with intent to distribute methamphetamine. Nicholas Berry, a police officer with the Waterloo Police Department, assigned to the Tri-County Drug Enforcement Task Force, testified regarding the circumstances underlying the instant charge.

On June 10, 2010, a confidential informant ("CI") called Defendant asking for 4 ounces of methamphetamine. Defendant agreed to deliver the methamphetamine to the CI later that same day at a Motel 6 in Waterloo, Iowa. Officer Berry surveilled Defendant's residence prior to the anticipated meeting time between Defendant and the CI. Berry observed Defendant's vehicle and followed Defendant to the Motel 6. Defendant parked his vehicle. Berry and another officer who arrived on the scene at the same time, parked their vehicles behind Defendant's vehicle. As he was exiting his vehicle, the

1

officers approached Defendant and identified themselves as "police." Defendant unsuccessfully attempted to re-enter his vehicle, and then fled on foot. The officers caught up with Defendant and took him to the ground. Defendant continued to struggle, and additional officers assisted in taking Defendant into custody. The officers searched Defendant and found 2.5 ounces of methamphetamine on his person.

Following Defendant's arrest, police officers went to his residence to "secure the residence" and stop evidence from being "destroyed." The officers found Defendant's girlfriend, Amanda Cooley ("Cooley"), at the residence. Officers removed Cooley from the residence, and then obtained a state court search warrant. Upon executing the search warrant, officers found over 350 grams of methamphetamine, $10,000 in cash, drug notes, drug packaging, a loaded handgun, and ammunition in the residence.

On June 15, 2010, police officers spoke with Defendant. Defendant told the officers that he had been getting marijuana and methamphetamine from an individual in Phoenix, Arizona for over one year. Defendant stated that he first received the drugs by mail, but more recently, he began receiving the drugs from a courier. Defendant stated that the last delivery of drugs was on June 5, 2010. Defendant also provided names of the people to whom he was distributing the methamphetamine.

Officer Berry also testified that law enforcement recorded telephone and face-to-face conversations of Defendant, while he was in the Black Hawk County Jail, talking about fleeing to Canada and injuring witnesses.

According to the pretrial services report, Defendant is 57 years old. He was born in Waterloo, Iowa. Defendant has lived in Waterloo for most of his life, except for living in Phoenix, Arizona from 2004 to 2009. Defendant has family in both the Waterloo area and Phoenix area.

Defendant is married, but he and his wife have been separated for one-and-a-half years. Defendant has no children from his current marriage. Prior to his current

marriage, Defendant was married twice before. He has two adult children from his first marriage, and three adult children from his second marriage.

Defendant is currently unemployed. In 1998, he retired from John Deere after 26 years of employment. In 2008, Defendant managed an eBay resale shop for about six months in Arizona. From 2005 to 2008, Defendant delivered newspapers in Phoenix.

Defendant suffers from several physical ailments. In 2005, he underwent treatment for skin cancer. He currently suffers from asthma and uses an inhaler. He also suffers from a swollen prostate, and takes Flomax for treatment. Defendant states that he has never suffered from a mental illness or been diagnosed with a mental illness, but acknowledges that he was admitted to the psychiatric unit of a Waterloo hospital on three occasions between 1995 and 2000.

Defendant reports that he consumed alcohol to excess on a daily basis from 1986 to 1989, but has "rarely" consumed alcohol since that time. Defendant stated that he used marijuana heavily in the 1970s, used it daily in 1997 and 1998, and has used it "now and then" since 1998. His last use was sometime in the spring of this year. Defendant also reports that he first used methamphetamine when he was 18 years old. He described his usage as "streaky" over the years, and for the eight months prior to his arrest in June 2010, he used methamphetamine on a daily basis.

In 1972, Defendant was convicted of aggravated assault. In 1975, he was convicted of assault and battery. On November 30, 1975, Defendant was convicted of operating a motor vehicle while intoxicated, first offense. On July 23, 1986, Defendant was convicted of operating a motor vehicle while intoxicated, first offense, and resisting arrest. On April 9, 1989, Defendant was convicted of operating a motor vehicle while intoxicated, second offense. He was sentenced to two years in prison, with all but ten days suspended, and ordered to pay a fine of $565. His probation was discharged April 5, 1991. In 1994, Defendant was convicted of assault, and served ten days in jail. On June 6, 2001, Defendant was convicted of fifth degree theft. He was ordered to pay a $50 fine.

On September 11, 2001, Defendant was convicted of possession of more than 5 grams of methamphetamine with intent to deliver, failure to affix a tax stamp, and possession of marijuana. The circumstances surrounding the September 2001 charges involve the execution of a search warrant on Defendant's residence, in which Defendant exited the back of the residence and fought with officers attempting to restrain him. On October 31, 2001, Defendant was sentenced to prison. He was released on parole on July 16, 2004, and apparently moved to Arizona at that time. His parole was discharged on August 29, 2007.

Following the events of June 10, 2010, Defendant was initially charged in state court with possession of more than 5 grams of methamphetamine with intent to deliver while in immediate possession of a firearm, failure to affix a tax stamp, possession of a firearm as a felon, and interference with official acts. All of those state charges were dismissed. Defendant was also charged with "ongoing criminal conduct," which was dismissed following the filing of the Complaint in the instant action.

DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). It must first determine by a preponderance of the evidence whether defendant has been charged with a certain type of offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines whether any condition or

combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

In seven enumerated circumstances, a judicial officer must hold a hearing to determine whether any release condition or combination of release conditions will reasonably assure the appearance of defendant as required and the safety of the community. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, serious drug offenses, and felonies involving minor victims. 18 U.S.C. § 3142(f)(1). The last two enumerated circumstances where a hearing is required involve "risk factors." 18 U.S.C. § 3142(f)(2). In this case, Defendant is charged with possession with intent to distribute methamphetamine, one of the offenses found in § 3142(f)(1). Also, the Government alleges a serious risk of flight.

If, following a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985). "Perhaps counter-intuitively, the government's evidentiary burden is lesser to prove a flight risk than to prove risk of harm." *United States v. Kisling*, 334 F.3d 734, 735, n.3 (8th Cir. 2003) (citing *Orta*).

In determining whether any condition of combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character,

physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in this case, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). If the Court finds there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. *United States v. Payne*, 660 F. Supp. 288, 291 (E.D. Mo. 1987). At the preliminary hearing, the Court found that there is probable cause to believe that the Defendant committed the offense described in the Criminal Complaint. In a "presumption case," the defendant bears a limited burden of production--not a burden of persuasion--to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id. See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

Turning to the facts in the instant action, Defendant is charged with possession with intent to distribute methamphetamine. The weight of the evidence against the Defendant is strong. On June 10, 2010, police officers set up a drug buy involving Defendant.

Officers approached Defendant at the site of the drug buy, and Defendant attempted to flee. After taking Defendant into custody, the officers found 2.5 ounces of methamphetamine on his person. On the same date, a search warrant was executed at Defendant's residence. Police officers found over 350 grams of methamphetamine, $10,000 in cash, drug notes, drug packaging, a loaded handgun, and ammunition in Defendant's residence. Defendant later admitted to officers that he received marijuana and methamphetamine for sale and sold them. Defendant has a prior felony drug conviction involving methamphetamine. If indicted and convicted of the offense charged, Defendant faces a mandatory minimum of 10 years in prison. When confronted by police in both cases involving methamphetamine, Defendant attempted to flee from the officers. While being held in the Black Hawk County jail on the instant charge, Defendant made statements regarding fleeing to Canada and injuring witnesses. Based on the serious nature and circumstances of the offense, and the rebuttable presumption, the Court finds that Defendant should be detained pending trial.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds the Government has met its burden of proving by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required. The Court further finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

**ORDER**

IT IS THEREFORE ORDERED as follows:

1. The Court finds that there is probable cause that Defendant committed the offense charged in the Complaint (docket number 2).

2. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

3. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

4. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

DATED this 7th day of October, 2010.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA